# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (AT CINCINNATI)

| | |
|---|---|
| WILLIAM P. SAWYER d/b/a/ SHARONVILLE FAMILY MEDICINE, individually and as the representative of a class of similarly-situated persons, | Civil Action No.: 1:16-cv-550 |
| | Judge: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| KRS GLOBAL BIOTECHNOLOGY, INC. and JOHN DOES 1-10, | |
| Defendants. | |

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Plaintiff William P. Sawyer d/b/a Sharonville Family Medicine ("Sharonville Family Medicine") alleges the following against Defendants KRS Global Biotechnology, Inc. and John Does 1-10 on behalf of itself and others situated similarly:

## PRELIMINARY STATEMENT

1. This case involves the sending of unsolicited advertisements via facsimile.

2. The Telephone Consumer Protection Act ("TCPA"), which was modified and renamed the Junk Fax Prevention Act ("JFPA") in 2005, is codified at 47 U.S.C. § 227. Under the JFPA, it is unlawful to send an unsolicited advertisement to someone's fax machine. The JFPA creates a private right of action and provides statutory damages of $500.00 per violation.

3. KRS Global sent an unsolicited advertisement to Sharonville Family Medicine on October 9, 2015 ("the 10/9 Fax Ad"). A copy of the 10/9 Fax Ad is attached hereto as Exhibit A. The 10/9 Fax Ad promotes the commercial availability and/or quality of KRS Global's products and services.

4. The receipt of an unsolicited advertisement via facsimile (or "junk fax") causes damage to the recipient. A junk fax uses the office supplies of the recipient such as paper, toner, and the fax machine itself. A junk fax also ties up the phone line and the fax machine of the recipient, thereby precluding their use for legitimate, authorized facsimiles and other business. Finally, a junk fax wastes the recipient's time in reviewing and discarding unwanted solicitations.

5. Based on information, belief, and the appearance of the 10/9 Fax Ad itself, KRS Global also sent the 10/9 Fax Ad to numerous other persons via their respective fax machines. KRS Global will likely continue to send such advertisements via facsimile absent an injunction or other action prohibiting such conduct.

6. The claims of Sharonville Family Medicine and the other recipients of the 10/9 Fax Ad are all based on the same legal theory; *i.e.,* violations of the JFPA. This action seeks the following relief expressly authorized by the JFPA: (i) an injunction prohibiting KRS Global, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending advertisements via facsimile in violation of the JFPA; (ii) actual and/or statutory damages, and (iii) treble damages.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as the JFPA is a federal statute and, therefore, gives rise to federal question jurisdiction. This Court has supplemental jurisdiction of the deceptive-trade-practices claim under 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over KRS Global because it transacted business within this judicial district, made contracts within this judicial district, and/or committed tortious acts within this judicial district.

9. This Court has venue under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

10. Sharonville Family Medicine is trade name registered in the State of Ohio for a medical facility located in Sharonville, Ohio.

11. KRS Global Biotechnology, Inc. is a Florida corporation, and its principal place of business is located at 791 Park of Commerce Blvd, Suite 600 in Boca Raton, FL 33487.

12. KRS Global is an outsourcing facility that produces and sells activity solutions and other medical products.

13. John Does 1-10 will be identified through discovery but are not presently known.

## FACTS

14. KRS Global sent material to Sharonville Family Medicine via its office facsimile machine that promoted the commercial availability or quality of KRS Global's products and/or services on October 9, 2015.

15. KRS Global did not seek or obtain permission from Sharonville Family Medicine to send advertisements to Sharonville Family Medicine's facsimile machine before doing so.

16. Based on information, belief, and the appearance of the 10/9 Fax Ad itself, KRS Global also sent the 10/9 Fax Ad to more than forty other persons via facsimile.

## CLASS ACTION ALLEGATIONS

17. In accordance with Fed. R. Civ. Pro 23, Sharonville Family Medicine brings this action on behalf of the following persons:

> All persons who (1) on or after four years prior to the filing of this action (2) were sent material advertising the commercial availability or quality of any property, goods, or services (3) by or

>> on behalf of KRS Global (4) via facsimile (5) that did not display a proper opt-out notice.

This group of persons constitutes the putative class. Sharonville Family Medicine may amend this class definition upon the discovery of the extent and nature of KRS Global's facsimile advertising activities, the number and identity of the class members, and/or other aspects of the putative class.

18. <u>Numerosity</u>: Based on information, belief, and the appearance of the 10/9 Fax Ad itself, the number of putative class members exceeds forty. 10/9 Fax Ads are typically sent to hundreds if not thousands of persons. The joinder of such a large group of persons in a single lawsuit would be impracticable.

19. <u>Commonality</u>: Common questions of law and fact apply to the claims of the putative class members. These include the following:

>> (a) Whether the 10/9 Fax Ad constitutes an "unsolicited advertisement" within the meaning of the JFPA;
>>
>> (b) How KRS Global compiled or obtained the list of fax numbers to which the 10/9 Fax Ad was sent;
>>
>> (c) Whether KRS Global violated the JFPA and the regulations promulgated thereunder with regard to the 10/9 Fax Ad or other facsimile advertisements;
>>
>> (d) Whether KRS Global sent the 10/9 Fax Ad intentionally, knowingly, or willfully; and

20. <u>Typicality</u>: Sharonville Family Medicine's claims are typical of the claims of the putative class members. Sharonville Family Medicine is asserting the same claim under the same federal statute as the other members of the putative class. Sharonville Family Medicine is also seeking the same relief for itself and the other members of the putative class.

21. <u>Adequacy</u>: Sharonville Family Medicine will fairly and adequately represent the interests of the putative class members. Sharonville Family Medicine has no interests in conflict with the putative class members, has the experience and inclination to prosecute this action, and has retained experienced counsel to assist it in doing so.

22. <u>Predominance</u>: The questions of law and fact common to the putative class members predominate over any questions affecting only individual members because:

    (a) Sharonville Family Medicine's claim depends on the same factual and legal issues as that of the putative class members;

    (b) the evidence supporting KRS Global's likely defenses will come solely from KRS Global's own records and will not require any information or inquiries from individual class members;

    (c) the damages for all putative class members are set by statute and will, therefore, be the same for each and every member of the putative class; and

    (d) the identity of the putative class members can be readily ascertained from KRS Global or its agents' computer records, phone records, or other business records.

23. <u>Superiority</u>: A class action would be superior to individual actions by the putative class members for the following reasons:

    (a) the damages suffered by any one class member are too low to justify a stand-alone lawsuit;

    (b) the JFPA contains no provision for awarding attorney fees. As such, individual claimants would, as a practical matter, have to proceed *pro se* against a large, sophisticated defendant*;*

    (c) many of the intended recipients are legal entities that would not be permitted to proceed in court *pro se*; and

5

  (d)  the evidence concerning each of the class member's claims is so similar that the adjudication of each on an individual basis would be repetitive, inefficient, and wasteful.

## **CLAIM FOR RELIEF – VIOLATIONS OF THE JFPA**

24. Under the JFPA, it is "unlawful for any person to . . . use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. 227(b)(1)(C).

25. Under the JFPA, "the term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

26. KRS Global sent the 10/9 Fax Ad to the facsimile machines of Sharonville Family Medicine and numerous other persons.

27. The 10/9 Fax Ad promotes the commercial availability or quality of the goods and/or services of KRS Global.

28. KRS Global did not obtain prior express invitation or permission from BK&L before sending the 10/9 Fax Ad to Sharonville Family Medicine's fax machine.

29. Based on information and belief, KRS Global has sent other advertisements to Sharonville Family Medicine and other persons via facsimile in violation of the JFPA.

30. KRS Global's conduct has caused Sharonville Family Medicine and the putative class members to suffer actual and statutory damages under the JFPA.

## **CLAIM FOR RELIEF – VIOLATIONS OF THE ODTPA**

31. O.R.C. § 4165.01-.04, which is commonly referred to as the Ohio Deceptive Trade Practices Act ("ODTPA"), generally prohibits deceptive trade practices. Specifically, the

6

ODTPA provides that "a person engages in a deceptive trade practice when, in the court of the person's business, vocation, or occupation, the person does any of the following: . . . (2) Causes likelihood of confusion as to the source, sponsorship, approval, or certification of goods or services . . . (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." O.R.C. § 4165.02(A)(2), (7).

32. On July 6, 2015, the U.S. Food and Drug Administration ("FDA") sent a letter ("the Citation Letter") to KRS Global setting forth violations of the Federal Food, Drug, and Cosmetic Act ("FDCA") and/or Compounding Quality Act ("CQA") committed by KRS Global. A copy of the Citation Letter is attached hereto as Exhibit B.

33. In the Citation Letter, the FDA stated "the investigator noted that drug products that were intended or expected to be sterile were prepared, packed, or held under insanitary conditions whereby they may have been contaminated with filth or rendered injurious to health . . . ." (Citation Letter, p. 2).

34. Likewise, in the Citation Letter, the FDA stated that the "FDA investigator observed significant CGMP violations at your facility, causing your drug products to be adulterated within the meaning of section 501(a)(2)(B) of the FDCA." (Citation Letter, p. 3).

35. Likewise, in the Citation Letter, the FDA concluded that "Your firm failed to establish an adequate system for monitoring environmental conditions in aseptic processing areas." (Citation Letter, p. 3).

36. The content of the 10/9 Fax Ad is inconsistent with the FDA's findings in the Citation Letter. For example, the 10/9 Fax Ad stated that "At KRS, we test 100% of our sterile injectables for sterility, endotoxins, and potency, while adhering to the FDA's Compounding Quality Act". Likewise, the 10/9 Fax Ad stated that "ALL FORMULATIONS are . . . cGMP &

GLP complaint" [and] "Compounded for your facilities by pharmacists extensively trained in aseptic technique." Finally, the 10/9 Fax Ad prominently displayed the FDA's trade symbol.

37. The display of the FDA trade symbol and above-described representations in the 10/9 Fax Ad suggested that KRS Global's operations and/or products had been approved or certified by the FDA. Because the FDA had not provided such approval or certification to KRS Global and, instead, had found "CGMP violations" at KRS Global's facility, the 10/9 Fax Ad was likely to cause confusion or misunderstanding and, therefore, was a "deceptive trade practice" within the meaning of the ODTPA.

WHEREFORE, Plaintiff William P. Sawyer d/b/a Sharonville Family Medicine, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants KRS Global Biotechnology, Inc. and John Does 1-10 as follows:

(1) that the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Sharonville Family Medicine as the representative of the class, and appoint Sharonville Family Medicine's counsel as counsel for the class;

(2) that the Court award actual or statutory damages to Sharonville Family Medicine and the other members of the class for each violation of the JFPA by KRS Global;

(3) that the Court enjoin KRS Global from additional violations of the JFPA and the ODTPA; and

(4) that the Court award Sharonville Family Medicine pre-judgment interest, post-judgment interest, attorney fees, treble damages, costs, and such other relief as may be just and proper.

Respectfully submitted,

SHARONVILLE FAMILY MEDICINE,
individually and as the representative of a class of similarly-situated persons,

*/s/ MATTHEW E. STUBBS*
GEORGE D. JONSON (0027124)
MATTHEW E. STUBBS (0066722)
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, Ohio  45202
(513) 241-4722
(513) 241-8775 (fax)
Email:  gjonson@mrjlaw.com
           mstubbs@mrjlaw.com

*Counsel for Plaintiff Sharonville Family Medicine*