IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM P. SAWYER d/b/a SHARONVILLE FAMILY MEDICINE, | : : : | Case No. 1:16-cv-550 |
| Plaintiff, | : : | Judge Susan J. Dlott |
| v. | : : : | **ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND DENYING CLASS CERTIFICATION** |
| KRS GLOBAL BIOTECHNOLOGY, INC., *et al.*, | : : : | |
| Defendants. | | |

This matter is before the Court on Plaintiff's Motion for Class Certification (Doc. 23). The Court referred this matter to the Magistrate Judge who conducted oral arguments and issued a Report and Recommendation that Plaintiff's Motion for Class Certification be denied (Doc. 37). Plaintiff filed Objections to the Report and Recommendation (Doc. 43). For the reasons that follow, the Plaintiff's Objections will be **OVERRULED**, and Plaintiff's Motion for Class Certification will be **DENIED**.

I.  BACKGROUND

A. **Facts**[1]

Plaintiff William Sawyer, d/b/a Sharonville Family Medicine ("Sawyer"), is a primary care medical practice located in Sharonville, Ohio. Sawyer has a telephone number that is used to receive faxes. Defendant KRS Global Biotechnology, Inc. ("KRS") is a Florida compounding pharmacy with nearly 90 employees, almost 20 of whom are sales representatives.

---

[1] The Magistrate Judge did an excellent job reciting the relevant facts which will be reiterated in large part here.

1

On October 9, 2015, KRS sent an unsolicited one-page advertisement for intravenous infusion sets and/or other products ("Infusion Kit Fax") to Sawyer. KRS admits that it had no prior business relationship with Sawyer and that KRS did not seek or obtain permission from Sawyer to send the Infusion Kit Fax prior to doing so. Although KRS admits that it sent an unsolicited fax to Sawyer, it maintains that the fax was sent in violation of KRS's established business practice to send fax advertisements only to existing customers and others who have agreed to receive the faxed advertisements. (Fromhoff Dep., Doc. 21 at PageID 16, 27, 44.)[2]

In October 2015, RingCentral provided KRS's telecommunications services. In response to a subpoena, RingCentral produced KRS's call and fax log data. The fax log contains the number of fax transmissions, the telephone numbers dialed, and whether the transmissions were successful. On most days, only about a dozen faxes were transmitted. However, on a few days in 2015, KRS transmitted tens of thousands of faxes. KRS transmitted the unusually large number of faxes by using an employee's computer to send an image to a database of fax numbers through RingCentral—a practice commonly called "fax blasting."

According to the fax log, KRS transmitted 34,773 outbound faxes on October 8 and October 9, 2015. More than 99% of these faxes originated from the same number as the number used to send Sawyer the Infusion Kit Fax. KRS disputes that it faxed 34,773 copies of the Infusion Kit Fax, but it admits it transmitted between 1,000 and 10,000 of that particular advertisement. The fax log reflects only whether a fax was successfully transmitted, not the content of the fax.

**B. Procedural Posture**

---

[2] After this litigation was initiated, KRS formalized their policy "that we will not send an advertisement to anybody unless they specifically give us permission to do so." (Fromhoff Dep., Doc. 21 at PageID 140.)

Sawyer initiated this putative class action under the "junk fax" provision of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(C). Although it seems odd that the problem persists in the electronic age, the "junk fax" provision attempts to curb the inundation of unwanted faxes. This provision of the TCPA makes it unlawful to send an unsolicited advertisement via fax unless: (1) the sender and recipient have an established business relationship; (2) the recipient granted permission by either providing the fax number individually or by making the fax number publicly available; (3) the unsolicited advertisement contains an opt-out notice that complies with statutory requirements. 47 U.S.C. § 227(b)(1)(C).

To ensure compliance, the TCPA provides a private right of action and a $500 fine per fax sent which can increase to a $1,500 fine per fax for willful violations. 47 U.S.C. § 227(b)(3). Due to the statutory damage amounts involved, private litigation under the TCPA has increased significantly in the federal courts in recent years. *See* Doc. 37 at PageID 4546, fn. 3 (providing multiple examples from this district alone).

Sawyer filed a Motion for Class Certification in which it seeks to represent all 34,773 fax recipients it claims received the Infusion Kit Fax on October 8 or October 9, 2015. (Doc. 23 at PageID 1366–67.) This Court referred the motion to a Magistrate Judge for a report and recommendation, pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(B).

The Magistrate Judge conducted oral argument on May 14, 2018. In a well-reasoned report, the Magistrate Judge explained, in part, that Sawyer failed to satisfy the "predominance" requirement of Federal Civil Rule 23(b)(3) as individualized questions of consent to receive the Infusion Kit Fax prevented common questions from predominating and recommended that Sawyer's Motion to Certify Class be denied (Doc. 37).

Sawyer has filed Objections to the Report and Recommendation (Doc. 43) to which KRS has responded (Doc. 45).³ Specifically, Sawyer makes the following objections:

1. KRS's evidence of permission is insufficient to undermine the predominance requirement;

2. KRS bears the burden of proof on the permission defense;

3. The Magistrate Judge did not apply the appropriate legal standard for evaluating whether the prerequisites of commonality, typicality, and adequacy have been met; and

4. The Magistrate Judge failed to make a clear recommendation as to whether the prerequisites of adequacy and superiority have been met.

## II. APPLICABLE LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). To obtain class certification, the party seeking certification must demonstrate that the putative class meets all four Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Sandusky Wellness*, 863 F.3d at 466. In addition, the putative class must fall within one of three categories listed in Rule 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). "Rule 23(b)(3) classes—the kind at issue here—must meet predominance and superiority requirements,

---

³ The Court notes that KRS's 21-page response contains several pages of single-spaced quotations from its prior briefing as well as page-long or nearly page-long footnotes in 10-point font. (*See* Doc. 45.) This practice certainly violates the spirit—if not the letter—of the Court's Standing Order on Civil Procedures regarding page limitations and formatting, § I.E.1.d, and should not be repeated.

that is, 'questions of law or fact common to class members [must] predominate over any questions affecting only individual members' and class treatment must be 'superior to other available methods.'" *Sandusky Wellness* 863 F.3d at 466 (quoting Fed. R. Civ. P. 23(b)(3)). The party seeking class certification "bears the burden of 'affirmatively demonstrat[ing]' compliance with Rule 23." *Id.* at 466–67 (quoting *Wal-Mart*, 564 U.S. at 350).

The Magistrate Judge concluded that Sawyer failed to meet the predominance and superiority requirements of Rule 23(b)(3) and questioned whether Sawyer could meet the commonality, typicality, and adequacy requirements of Rule 23(a). Accordingly, the Magistrate Judge recommended denying Sawyer's Motion for Class Certification. This Court reviews *de novo* a Magistrate Judge's findings and recommendations on a motion for class certification. 28 U.S.C. § 636(b)(1).

### III. ANALYSIS

#### A. Sawyer Contends that Permission Alone Does Not Determine Predominance

Sawyer claims that the Magistrate Judge erred by focusing solely on permission in determining whether "questions of law or fact common to class members predominate over any questions affecting only individual members" as required by Rule 23(b)(3). "In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' . . . and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'" *Sandusky Wellness*, 863 F.3d at 468 (internal citation omitted) (quoting *Bridging Communities., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2012)). "[T]he key is to "identify[] the substantive issues that will control the outcome.'" *Id.* (quoting *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 326 (5th Cir. 2008)).

5

According to Sawyer, generalized proof can resolve the following issues in this case:

> (1) whether the IV Infusion Fax constitutes an "advertisement" within the meaning of the JFPA;[4] (2) whether the opt-out language on the IV Infusion Fax complies with the requirements of the JFPA; and (3) whether KRS Global obtained "prior express invitation or permission" from the recipients of the IV Infusion Fax.

(Doc. 43 at PageID 4660.) Sawyer's argument fails for two reasons.

First, KRS admits TCPA liability as to Sawyer. (Doc. 24 at PageID 4451.) ("KRS has admitted TCPA liability with regard to Mr. Sawyer.") Thus, KRS has already admitted that the Infusion Kit Fax is an advertisement and that the opt-out language is insufficient. The only issue to be litigated, then, is whether KRS obtained permission to send the faxes. Permission is—contrary to Sawyer's assertion—the sole substantive issue on which this litigation will turn and, therefore, the issue key to whether common questions predominate.

Second, the Sixth Circuit has provided guidance for determining when TCPA junk fax cases meet the predominance requirement and when they do not. *Compare Sandusky Wellness*, 863 F.3d at 470 with *Bridging Communities, Inc.*, 843 F.3d at 1126. In *Bridging Communities*, the defendant sent faxes to everybody on a list purchased from a third party without taking steps to obtain or verify permission. 843 F.3d at 1126. In that case, the Court held the mere *possibility* that an individual class member *might* have agreed to receive the challenged fax did not defeat predominance as the Court was "unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling.'" *Id.* at 1125 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)).

---

[4]Sawyer uses "JFPA" to refer to the Junk Fax Prevention Act amendment to the Telephone Consumer Protection Act, *see* Pub. L. No. 109-21, 119 Stat. 359 (codified at 46 U.S.C. § 227). Because both the Sixth Circuit Court of Appeals and the Magistrate Judge in this case use the acronym "TCPA" to refer to the amended Telephone Consumer Protection Act, this Court will do the same for the sake of clarity.

By contrast, the defendant in *Sandusky Wellness* faxed everyone on a list purchased from a third-party provider. The defendants later learned that "several thousand" of the more than 53,000 physicians on the fax list were already in an established business relationship with the defendant as current or former customers. *Sandusky Wellness* 863 F.3d at 468. The Court concluded that—since the defendant presented "actual evidence of consent . . . which required the need for individualized inquiries in order to distinguish between solicited and unsolicited" faxes—predominance had not been established and class certification was properly denied. *Id.* at 470.

In the case at bar, KRS offered evidence that it does not purchase fax lists from third party brokers. (Suer Dep., Doc. 22 at PageID 30.) Instead, KRS "has slowly built a collection of fax numbers of potential customers" through sales team members who attend trade shows, collect business cards, arrange meetings, scour the internet for publicly available contact information, and contact physicians and surgical centers to gauge interest in KRS products. (Fromhoff Dep., Doc. 21 at PageID 16.) Once KRS finds someone who would like to receive KRS product information, the sales team members enter the information in an Excel spreadsheet. (*Id.* at PageID 127–29; Suer Dep., Doc. 22 at PageID 1061.) KRS also uses accounting software to maintain information relating to current or former customers. (Suer Dep., Doc. 22 at PageID 1061–62.) KRS "sales reps do have that conversation quite often" where they call someone and say, "Hey, we'd like to send you a marketing flyer to your fax machine. Will you agree to do so?" (*Id.* at PageID 1070.) The software does not track individual conversations with people, but KRS has a process to remove contact information should a customer or potential customer choose not to receive faxes. (*Id.* at PageID 1071–72.) Sawyer offers no evidence to contradict KRS's deposition testimony.

Applying the guidance offered by the Sixth Circuit, then, this case requires even more individualized inquiries to distinguish between solicited and unsolicited faxes than the parties in *Sandusky Wellness*. KRS did not obtain the fax numbers in a single generalized way. Rather, KRS has offered evidence that every fax number on the list to receive the Infusion Kit Fax granted permission to receive it. While Sawyer states that he did not consent to receive the Infusion Kit Fax, KRS's evidence is sufficient to demonstrate a bona fide issue of consent as to 34,772 of the alleged 34,773 fax recipients. Litigating this matter would require testimony from various sales representatives and individual fax recipients to determine how each fax number landed on the list and whether fax permission had been received. Accordingly, common questions of law or fact do not predominate over questions affecting only individual members, and class certification under Rule 23(b)(3) is not appropriate.

Sawyer insists that KRS has produced "no individualized evidence of permission in this case whatsoever." (Doc. 43 at PageID 4666.) The Court disagrees. As detailed above, KRS has produced evidence that *every* number was on the fax list with permission. More importantly, Sawyer has produced no evidence indicating generalized *lack* of permission. The plaintiffs in the cases upon which Sawyer relies offered evidence that defendants purchased lists of fax numbers from third parties, and then began indiscriminately transmitting faxes to those numbers without regard for permission. In those cases, then, the permission issue determination begins with generalized proof as to how the fax senders came to have those fax numbers. In this case, no such generalized evidence was ever presented.

### B. Sawyer Claims that Permission is a Defense on which KRS bears the Burden of Proof

Sawyer next contends that permission is a defense on which KRS bears the burden of proof by clear and convincing evidence. While this contention may or may not be true for liability purposes, "[i]t is the party seeking class certification . . . that bears the burden of 'affirmatively demonstrat[ing]' compliance with Rule 23." *Sandusky Wellness*, 863 F.3d at 466–67 (quoting *Wal-Mart*, 564 U.S. at 350).

Sawyer alleges that Sharonville Family Medicine did not grant permission to receive the Infusion Kit Fax, and KRS does not dispute that allegation. However, the record is utterly devoid of evidence that anyone other than Sawyer received the fax without permission. In other TCPA "fax-blasting" cases, the purchased list of previously unknown fax numbers serves as generalized evidence of lack of permission. In this case, however, no such generalized evidence has been presented. Sawyer (as the party seeking class certification) bears the burden of demonstrating predominance. KRS does not bear the burden of demonstrating a lack thereof.

### C. Sawyer's Remaining Objections are Moot

The Magistrate Judge entered a thorough and thoughtful Report and Recommendation in this case. As part of that report, she properly concluded that Sawyer has failed to satisfy the predominance requirement of Rule 23(b)(3). As explained above, the Court—after reviewing this matter *de novo*—agrees. Because Sawyer has failed to fulfill the requirements of Rule 23(b), his remaining objections are moot.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**. Plaintiff's Motion for Class Certification (Doc. 23) is **DENIED**.

**IT IS SO ORDERED**.

Dated: 9/5/18                            S/Susan J. Dlott_____
                                                             Judge Susan J. Dlott
                                                             United States District Court