# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM P. SAWYER d/b/a
SHARONVILLE FAMILY MEDICINE,    Case No. 1:16-cv-550

     Plaintiff,         Dlott, J.
  v.              Bowman, M.J.

KRS BIOTECHNOLOGY, INC., et al.,

     Defendants.

## REPORT AND RECOMMENDATION

Plaintiff William P. Sawyer, doing business as Sharonville Family Medicine ("Sawyer"), filed this putative class action against Defendant KRS Global Biotechnology, Inc. ("KRS") and ten "John Doe" individuals under the "junk fax" provision of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C). On May 30, 2018, the undersigned filed a Report and Recommendation ("R&R") that Plaintiff's motion for class certification be denied.[1] (Doc. 37). On September 5, 2018, over Plaintiff's objections, the presiding district judge adopted that R&R for the opinion of the Court. (Doc. 49).

Thereafter, the parties agreed that Plaintiff's individual claims could be fully resolved on summary judgment without further discovery and filed cross-motions for that purpose. (Docs. 53, 54; *see also* Doc. 51 at PageID 4881). For the reasons that follow, the undersigned now recommends that judgment be entered in favor of Plaintiff on its TCPA claim in the amount of $500.00, and that all remaining claims be dismissed.

---

[1]All pretrial and post-judgment motions and procedures have been referred to the undersigned magistrate judge. (Doc. 31).

# I.     Standard of Review for Summary Judgment

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

As stated, the parties agree that this case can be fully resolved on cross-motions for summary judgment. The undersigned finds no need to set forth the applicable standard of review in detail, other than noting that the undersigned has considered each party's motion separately by "view[ing] the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks and citations omitted). *see also Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F.Supp.2d 706, 732 (S.D. Ohio 2006) (explaining that cross-motions for summary judgment do not alter the applicable standard of review, since each party's motion is reviewed separately by the Court)

# I.     Undisputed Facts and Procedural History

The factual background of this case was previously set forth by the Court in ruling on the class certification issues. (*See* Docs. 37, 49). In addition, facts designated as undisputed by the parties in their respective Proposed Findings have been accepted by the Court.

On October 9, 2015, KRS sent an unsolicited one-page advertisement to William Sawyer, M.D., d/b/a as Sharonville Family Medicine ("Sawyer"). (Doc. 56-1, Undisputed Facts, at No.1, at PageID 4950). The fax promoted KRS's IV infusion sets and/or other products and services ("Infusion Kit Fax"). (*Id.*) In addition to being unsolicited, the Infusion Kit Fax did not display a "proper opt-out notice." (*See* Doc. 49 at 6, "KRS has already admitted that the Infusion Kit Fax is an advertisement and that the opt-out language is insufficient.").

Sawyer filed suit alleging that the unsolicited fax violated the Junk Fax Prevention Act, 47 U.S.C. § 227(b)(1)(C). Additionally, Sawyer alleged that the content of the fax violated the Ohio Deceptive Trade Practices Act (ODTPA), Ohio R.C. §§ 4165.01-4165.04. (Doc 1, ¶¶31-37, at PageID 6-8). Although Sawyer initially identified John Does 1-10 as additional defendants, the record does not reflect that any John Does have ever been identified or served.

From the outset of this case, KRS has never contested its liability under the TCPA to Sawyer. (Doc. 23-10, at PageID 4423, KRS Response to Plaintiff's First Set of Requests for Admissions). The TCPA imposes statutory liability even under the circumstances presented in this case, where KRS maintains that it sent the unsolicited fax "unwillingly and unknowingly." (*See also* Doc. 56-1 6, Sawyer's agreement to KRS Proposed Undisputed Fact No. 1). In contrast to its admitted TCPA liability to Sawyer, however, KRS steadfastly denies ever sending unsolicited faxes to any other individual or business. Moreover, it is undisputed that the single Infusion Kit Fax ad was the only material that Plaintiff Sawyer ever received from KRS. (Doc. 56-1, Undisputed Facts at No. 8, at PageID 4962).

Plaintiff simultaneously engaged in discovery pertinent to class certification issues and to its underlying case in chief. The Court's calendar order directed the parties to complete all discovery by June 1, 2017. (Doc. 13, at PageID 56). Following the denial of class certification on September 5, 2018, the parties agreed that no further discovery should be permitted. (Doc. 51,at PageID 4881).

The record reflects that KRS transmitted 34,773 faxes on the date that Sawyer received a fax, but Sawyer was unable to produce evidence to suggest that any fax transmission to any of the other 34,772 recipients was unsolicited. Likewise, Sawyer failed to produce any evidence about the content of the faxes sent to the other 34,772 recipients – whether those fax transmissions were identical or different from that received by Sawyer.[2] Nevertheless, in seeking class certification, Sawyer sought to recover damages on behalf of a class that included the additional 34,772 recipients who received some form of fax from KRS on the same date that Sawyer received the single unsolicited Infusion Kit Fax ad.

This Court denied class certification after holding that Sawyer had failed to meet the predominance and superiority requirements of Rule 23(b)(3). The facts summarized by the Court in adopting the last R&R remain relevant to the motions now pending:

> In the case at bar, KRS offered evidence that it does not purchase fax lists from third party brokers. (Suer Dep., Doc. 22 at PageID 30.) Instead, KRS "has slowly built a collection of fax numbers of potential customers" through sales team members who attend trade shows, collect business cards, arrange meetings, scour the internet for publicly available contact information, and contact physicians and surgical centers to gauge interest in KRS products. (Fromhoff Dep., Doc. 21 at PageID 16.) Once KRS finds someone who would like to receive KRS product information, the sales team members enter the information in an Excel spreadsheet. (Id. at PageID

---

[2] KRS admitted that it sent identical Infusion Kit Fax advertisements to consenting or otherwise permissible recipients, but maintained that the Infusion Kit Fax made up only a fraction of the total number of faxes it sent that day (more than 1,000 but less than 10,000). (Doc. 49 at PageID 4871).

127–29; Suer Dep., Doc. 22 at PageID 1061.) KRS also uses accounting software to maintain information relating to current or former customers. (Suer Dep., Doc. 22 at PageID 1061–62.) KRS "sales reps do have that conversation quite often" where they call someone and say, "Hey, we'd like to send you a marketing flyer to your fax machine. Will you agree to do so?" (*Id.* at PageID 1070.) The software does not track individual conversations with people, but KRS has a process to remove contact information should a customer or potential customer choose not to receive faxes. (*Id.* at PageID 1071–72.) <u>Sawyer offers no evidence to contradict KRS's deposition testimony</u>.

…KRS did not obtain the fax numbers in a single generalized way. Rather, KRS has offered evidence that every fax number on the list to receive the Infusion Kit Fax granted permission to receive it. While Sawyer states that he did not consent to receive the Infusion Kit Fax, KRS's evidence is sufficient to demonstrate a bona fide issue of consent as to 34,772 of the alleged 34,773 fax recipients. Litigating this matter would require testimony from various sales representatives and individual fax recipients to determine how each fax number landed on the list and whether fax permission had been received. Accordingly, common questions of law or fact do not predominate over questions affecting only individual members, and class certification under Rule 23(b)(3) is not appropriate.

Sawyer insists that KRS has produced "no individualized evidence of permission in this case whatsoever." (Doc. 43 at PageID 4666.) The Court disagrees. <u>As detailed above, KRS has produced evidence that *every* number was on the fax list with permission. More importantly, Sawyer has produced no evidence indicating generalized lack of permission</u>.

(Doc. 49 at PageID 4876-7, emphasis added). The Court explained that as the party seeking class certification, Sawyer was required to demonstrate the "predominance" factor. In denying class certification, the Court emphasized that "the record is utterly devoid of evidence that anyone other than Sawyer received the fax without permission." (*Id.* at PageID 4878).

**II.    Analysis**

    **A.  The TCPA Claim**

The TCPA provides a private right of action and a $500 fine per fax transmitted, which can be trebled to $1,500 for "willful" violations. As this Court and many others have

noted, private litigation under the TCPA has increased significantly in recent years. (*See* Doc. 37 at n. 3, PageID 4546).    In the case presented, the complaint sought actual or statutory damages under the TCPA, injunctive relief, and "pre-judgment interest, post-judgment interest, attorney fees, treble damages, costs, and such other relief as may be just and proper" (Doc. 1 at ¶34, PageID 7).  Plaintiff now seeks judgment as a matter of law under the Junk Fax Prevention Act portion of the TCPA, which makes it unlawful to send unsolicited advertisements to a telephone facsimile machine, unless certain statutory and regulatory requirements are satisfied. 47 U.S.C. § 227(b)(1)(C).

Because Plaintiff's motion for class certification was denied, Sawyer may recover damages only for the single fax transmission of an unsolicited fax on October 9, 2015. KRS has long admitted its liability to Sawyer for this single violation under the TCPA.[3] Accordingly, Sawyer is entitled to judgment as a matter of law on that claim against KRS. By contrast, the undersigned recommends *sua sponte* dismissal and the denial of judgment against all "John Doe" Defendants.    Plaintiff failed to identify or serve any such John Doe Defendants, and his time for doing so has long expired.    *Accord Wicker v. Lawless*, 278 F. Supp.3d 989, 1003 (S.D. Ohio 2017).

### B.  The Ohio Deceptive Trade Practices Act Claim (ODTPA)

Plaintiff's motion for summary judgment is wholly silent about Plaintiff's separately alleged claim under the Ohio Deceptive Trade Practices Act (ODTPA).   It remains Plaintiff's burden to prove that Defendant is liable for the alleged ODTPA violation.  Here, Defendant seeks summary judgment on grounds that Plaintiff has failed to offer any

---

[3] Notwithstanding this admission and the fact that class certification was denied, leaving Plaintiff without standing to pursue any fax recipient's claim other than its own, Plaintiff's motion for summary judgment devotes a substantial portion of its 18 pages to arguments about KRS's alleged burden to establish that it was permitted to send faxes to other recipients.  No such burden exists in this case.

evidence that the contents of the Infusion Kit fax satisfied the elements of an ODTPA claim under the state law. *See generally, e.g., Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp 2d 942, 951 (S.D. Ohio 2003) (identifying four elements of claim under Ohio law); *Strama v. Allstate Ins. Co,* 2015 WL 3946373, at *9 (Ohio Ct. App. June 17, 2015). (similarly listing "(1) a false statement or statement which is misleading; (2) which statement actually deceived or has the tendency to deceive a substantial segment of the target audience; (3) the deception is material in that it is likely to influence a purchasing decision; and (4) the plaintiff has been or is likely to be injured as a result").

Aside from a cursory suggestion that it "does dispute many" of the facts on which Defendant relies to support its motion, Plaintiff offers no evidence to support this claim. (Doc. 56 at 4947). Instead, Plaintiff represents that it "is not seeking to pursue the ODTPA claim." (*Id.*).[4] On that basis, Plaintiff "concurs in…dismissal" of the state law claim. (*Id.*). Based upon the factual and legal arguments made by the Defendant, the undersigned recommends that summary judgment be granted to KRS on this claim.

### C. Plaintiff's Claim for Relief

A plaintiff has the burden of proof on all elements of its claim, including damages. In a private action brought under the TCPA, a party may recover the greater of actual monetary loss or $500. 47 U.S.C. § 227(b)(3). Thus, the monetary penalty for violating the TCPA is, at minimum, $500. *See Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir.

---

[4] Plaintiff's counsel refers to an email dated October 11, 2017 in which he requested Defendant's consent to amendment of the complaint to "withdraw/drop the claim for violations of the ODTPA." Although Plaintiff complains that he received no response to that email, neither did Plaintiff file any formal motion to amend at any time after Defendant filed its answer. A party may amend its pleading with the opposing party's written consent or the court's leave. Fed. R. Civ. Proc. 15(a)(2); *Foman v. Davis*, 371 U.S. 178 (1962) (holding that 15(a) imposes a mandate that the court should "freely give" leave that is requested "in the absence of any apparent or declared reason").

2011). Considering that this lawsuit concerns only a single, one-page errant fax transmission, Sawyer neither alleges nor points to any evidence that it suffered actual damages in excess of the $500 statutory minimum. Instead, the primary issue addressed by the cross-motions for summary judgment is whether damages should be trebled.

Plaintiff's motion specifically seeks an award that is limited to monetary damages "in the amount of $1,500.00 and costs." (Doc. 53 at PageID 4900). Before addressing the treble damage issue, the undersigned notes that Plaintiff no longer seeks the additional forms of relief included in his initial complaint, such as injunctive relief, pre-judgment interest, post-judgment interest, and attorney fees. To the extent that Plaintiff did not intend to waive additional relief, the undersigned would recommend denial based upon Plaintiff's failure to point to any evidentiary support for such relief for his remaining individual TCPA claim.[5]

Returning to the treble damage issue, the TCPA expressly allows a court the discretion to award treble damages "[i]f the court finds the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3). The statute does not define willfully or knowingly, and courts are split on its statutory meaning under the TCPA. *See Charvat v. NMP,* 2012 WL 4482945 at *5 (S.D. Ohio Sept. 27, 2012). To ascertain when treble damages are warranted, this Court has relied upon analogous statutory provisions to provide guidance. *Id.* at *4 (discussing potentially relevant criteria). Ultimately, however, an award of treble damages remains expressly within a court's "discretion" even if a willful and knowing violation is found. 47

---

[5] Plaintiff admits that "Sawyer seeks only injunctive relief under the ODTPA." (Doc. 56-1 at No. 18, Page ID 4966).

U.S.C. § 227(b)(3).

In seeking a treble damage award totaling $1,500.00, Sawyer acknowledges that this case is no longer a putative class action but concerns only his claim and whether KRS violated the TCPA on that single occasion willfully or knowingly. Nevertheless, in support of treble damages, Sawyer relies exclusively upon the same evidence on which Plaintiff relied for class certification. In denying class certification, this Court pointed out that Defendant had come forward with evidence that it gathered fax numbers through legitimate practices without resorting to the purchase of fax lists, and that Plaintiff failed to offer any contrary evidence to contradict the Defendant's evidence. The Court also cited KRS's production of "evidence that *every* number was on the fax list with permission," and contrasted that evidence with Sawyer's inability to cite to any "evidence indicating generalized lack of permission." (Doc. 49 at PageID 4877).

This is no longer a case about alleged "knowing and willful" conduct by KRS with respect to any fax transmission other than the one sent to Sawyer, which the parties agree in the undisputed facts was transmitted "unwillingly and unknowingly." (Doc. 56-1 at No. 1, PageID 4954). Even if this Court were to consider KRS's conduct in transmitting other faxes,[6] however, this Court previously held the record to be "utterly devoid of evidence that anyone other than Sawyer received the fax without permission." (Doc. 49 at PageID 4878). Based upon the record concerning the single TCPA violation by KRS in this case, the minimal harm demonstrated by Sawyer, and the lack of any other evidence suggesting that violation was willful and knowing, the undersigned recommends the

---

[6] Although KRS appears to have waived the Court's consideration of this evidence, its relevance and basis for admissibility are not entirely clear.

denial of Plaintiff's claim for treble damages. *Accord Asher & Simons, P.A. v. j2 Global Canada, Inc.*, 965 F. Supp.2d 701, 707 (D. Md. 2013) (denying injunctive relief or treble damages for a "single, seemingly isolated violation of the TCPA") (vacated in part on reconsideration, 977 F. Supp.2d 544 (D. Md. 2013)); *contrast Lucas v. Telemarketer Calling from (407) 476-5680*, 2013 WL 4536872 (S.D. Ohio Aug. 27, 2013) (finding multiple willful and knowing violations by telemarketer of do-not-call list requirements).

## III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion for summary judgment (Doc. 53) be **GRANTED in part and denied in part**, with damages limited to $500.00 on Plaintiff's single TCPA claim;

2. Defendant's cross-motion for partial summary judgment (Doc. 54) should be **GRANTED**;

3. With the exception of the judgment to be entered in favor of Plaintiff Sawyer and against Defendant KRS in the amount of $500.00 on the single TCPA claim, all other claims and Defendants should be dismissed.


               */s/ Stephanie K. Bowman*
               Stephanie K. Bowman
               United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

WILLIAM P. SAWYER d/b/a
SHARONVILLE FAMILY MEDICINE,                    Case No. 1:16-cv-550

                        Plaintiff,                    Dlott, J.
        v.                                            Bowman, M.J.

KRS BIOTECHNOLOGY, INC., et al.,

                        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).